IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ACCESS INFORMATION MANAGEMENT OF HAWAII, LLC, SIH LLC, dba SHRED-IT HAWAII, and EDWARD MACNAUGHTON,<br><br>        Plaintiffs,<br><br>  vs.<br><br>SHRED-IT AMERICA, INC., DOE DEFENDANTS 1-5,<br><br>        Defendants. | CIVIL NO. 10-00621 DAE-RLP<br><br>FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS ACCESS INFORMATION MANAGEMENT OF HAWAII, LLC, SIH LLC, dba SHRED-IT HAWAII, and EDWARD MACNAUGHTON'S MOTION FOR ATTORNEY FEES AND COSTS |

FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS ACCESS INFORMATION MANAGEMENT OF HAWAII, LLC, SIH LLC, dba SHRED-IT HAWAII, and EDWARD MACNAUGHTON'S MOTION FOR ATTORNEY FEES AND COSTS[1]

Before the Court is Plaintiffs Access Information Management of Hawaii, LLC ("Access"), SIH LLC, dba Shred-It Hawaii ("SIH"), and Edward MacNaughton's ("MacNaughton") (collectively "Plaintiffs") Motion for Attorney Fees and Costs ("Motion"), filed herein on January 10, 2011. Plaintiffs request an award of $10,184.00 in attorneys' fees (plus $424.87 in

---

[1] Within seventeen (17) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), LR 74.2 of the Local Rules of Practice for the United States District Court for the District of Hawaii, and Rule 6(d) of the Federal Rules of Civil Procedure, file written objections in the United States District Court. A party must file any objections within the seventeen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

general excise tax) and $42.00 in costs for a total of $10,650.87 incurred in remanding this action back to the First Circuit Court, State of Hawaii, after Defendant Shred-It America's ("SIA") improper removal to this Court.  SIA filed its memorandum in opposition to Plaintiffs' Motion on March 3, 2011 ("Opposition"), and Plaintiffs filed their reply on March 10, 2011.

The Court finds this matter suitable for disposition without a hearing pursuant to LR 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  Based on the following, and after careful consideration of the Motion, the supporting memoranda and declarations attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion be DENIED.

## BACKGROUND

This action is one of four related cases involving similar parties and issues filed in the District of Hawaii.[2]  On September 22, 2010, Access and SIH filed suit in Hawaii state court against SIA for declaratory and injunctive relief, seeking a determination that the Franchise Agreement between SIA and SIH

---

[2] The parties and the Court are intimately familiar with the factual and procedural background of this case.  Accordingly, the Court will only discuss those facts that are relevant to the determination of the instant Motion.

(through MacNaughton) was void as violating Hawaii law.[3]  See
Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc., Civil No.
10-1-2028-09 PWB, First Circuit Court, State of Hawaii.  Access
and SIH subsequently filed a First Amended Complaint, joining
MacNaughton as a plaintiff and adding additional state court
claims on October 12, 2010.  On October 20, 2010, SIA removed the
action to this Court.  See Access Info. Mgmt. of Haw., LLC v.
Shred-It Am., Inc., Civil No. 10-00614 DAE-KSC, United States
District Court, District of Hawaii.  Access, SIH, and MacNaughton
dismissed the suit without prejudice the next day.

Meanwhile, SIA filed suit in this Court against
MacNaughton, SIH, and Access on September 24, 2010, alleging
*inter alia* that SIH and MacNaughton breached the Franchise
Agreement by selling business assets to Access, an SIA
competitor, misappropriating trade secrets, and infringing SIA's
trademarks.  See Shred-It Am., Inc. v. MacNaughton, Civil No. 10-
00547 DAE-KSC, United States District Court, District of Hawaii.

Subsequently, Access, SIH, and MacNaughton filed two
separate actions against SIA in Hawaii state court on October 21,
2010, which are particularly relevant to the instant Motion.
Access filed the first action against SIA, alleging state law

---

[3]  On July 27, 1998, SIA entered into a written Franchise Agreement with MacNaughton, as trustee for the yet-to-be-formed SIH, which granted MacNaughton the exclusive right to operate a Shred-It franchise in the State of Hawaii for a period of ten years.

3

claims for unfair methods of competition and misconduct. See Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc., Civil No. 10-1-2259-10 KKS, First Circuit Court, State of Hawaii. SIA removed the action to federal court on October 25, 2010. See Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc., Civil No. 10-00622 JMS-KSC, United States District Court, District of Hawaii. On October 27, 2010, Access filed a Motion for Temporary Restraining Order to Halt Deceptive and Unfair Practices or, in the Alternative, Remand. United States District Judge J. Michael Seabright found that there was no basis for federal jurisdiction over the suit, and remanded it back to Hawaii state court on November 2, 2010.

Access, SIH, and MacNaughton filed the second action against SIA, seeking to enjoin SIA's efforts to force arbitration under the Franchise Agreement on the basis that the agreement was void. See Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc., 10-1-2260-10 PWB, First Circuit Court, State of Hawaii. SIA also removed this action to federal court on October 25, 2010. See Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc., Civil No. 10-00621 DAE-LEK, United States District Court, District of Hawaii. On October 27, 2010, Access, SIH, and MacNaughton filed an Emergency Motion to Remand, or in the Alternative, Motion for Preliminary Injunction to Enjoin Arbitration. United States District Judge David Alan Ezra similarly found that the action

was improperly removed to federal court, and remanded it back to Hawaii state court on December 27, 2010.

## ANALYSIS

**A.   Legal Standard for Determining Entitlement to Removal Expenses**

Plaintiffs seek attorneys' fees and costs incurred as a result of SIA's improper removal of the instant case to federal court.  When a federal court remands a case back to state court, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); Garner v. UICI, 508 F.3d 559, 561 (9th Cir. 2007).  By enacting the removal statute, Congress did not intend to make fee shifting automatic.  Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  Rather, the United States Supreme Court has held that the standard for awarding fees turns on the reasonableness of the removal: "Absent unusual circumstances, the court may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141.

In applying this rule, the Ninth Circuit cautioned that "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." Lussier v.

Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, the objective reasonableness of the removal depends on the clarity of the applicable case law and whether such law "clearly foreclosed" the defendant's basis for removal. Id. at 1066-67 (citing Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007)). See also Garner, 508 F.3d at 562 (holding that removal costs were not warranted where a reasonable litigant in position of the removing party "could have concluded" that federal court was the proper forum).

The district court retains discretion to determine whether a given case presents unusual circumstances that warrant a departure from this rule. Martin, 546 U.S. at 141. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c). Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (listing nonexclusive factors to guide district courts' discretion in awarding attorneys' fees as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.")). The Martin Court also instructed:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic

>      decision to afford defendants a right to
>      remove as a general matter, when the statutory
>      criteria are satisfied.

Id. at 140.

**B.   Relevant Law Did Not Clearly Foreclose SIA's Basis for Removal**

Plaintiffs first argue that they are entitled to an award of removal expenses because SIA lacked an objectively reasonable basis for removing this matter to federal court.

SIA's assertion of removal jurisdiction stemmed from the Franchise Agreement that SIA, a Nevada corporation with its then principal place of business in California, and MacNaughton, in trust for what later became SIH, entered into in July 1998. See Removal Notice ¶ 8. The Franchise Agreement provides that, to the extent it is not governed by the Lanham Act, it is to be interpreted according to California law, and that any action must be brought in Orange County, California. See Removal Notice Ex. "A", Franchise Agreement at 30. The Franchise Agreement also contains a provision requiring the parties to submit all disputes to arbitration to be determined under the rules of the American Arbitration Association. Id. at 30-31.

SIA contended that this arbitration provision "falls under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), such that the district court had original jurisdiction under 9 U.S.C. § 203

7

and federal question jurisdiction pursuant to 28 U.S.C. § 1331. See Removal Notice ¶ 8. Section 203 states that "[a]n action or proceeding falling under the [New York Convention] shall be deemed to arise under the laws and treaties of the United States. 28 U.S.C. § 203. When such an action is initially filed in state court, the action can be removed to federal court, pursuant to Section 205, if (1) the arbitration agreement "falls under" the New York Convention; and (2) the parties' dispute "relates to" the arbitration agreement. Beiser v. Weyler, 284 F.3d 665, 666 (5th Cir. 2002); Acosta v. Master Maint. & Constr., Inc., 452 F.3d 373, 376 (5th Cir. 2006).

Section 202 outlines the circumstances under which an action or proceeding "falls under" the New York Convention. This provision requires the following four factors: (1) an agreement in writing within the meaning of the New York Convention; (2) the agreement provides for arbitration within a territory of a signatory of the New York Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or the commercial relationship at issue involves property located abroad, envisages performance or enforcement abroad, or has some reasonable relation with one or more foreign states. Balen v. Holland Am. Line, Inc., 583 F.3d

8

647, 654-55 (9th Cir. 2009) (quoting Bautista v. Star Cruises, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)).

The parties in the instant action did not dispute that the first three factors were met or that both SIA and SIH are United States companies. SIA also did not argue that its relationship with SIH involves property abroad or envisages performance and/or enforcement abroad; rather, SIA only contended that its relationship with SIH had "some other reasonable relation" to Canada.

The focus of whether a commercial relationship has a reasonable relation to a foreign state is not on the Franchise Agreement alone, but on the "legal relationship in which the arbitration agreement or arbitral award arises." Ensco Offshore Co. v. Titan Marine LLC, 370 F. Supp. 2d 594, 601 (S.D. Tex. 2005). Courts have also characterized this factor as requiring the presence of an "important foreign element." See Freudensprung v. Offshore Technical Servs., Inc., 379 F.2d 327, 340 (5th Cir. 2004); Jones v. Sea Tow Servs. Freeport NY Inc., 30 F.3d 360, 366 (2d Cir. 1994). Indeed, if the parties to the agreement are both United States citizens, "their agreement to arbitrate falls under the New York Convention only if significant extra-domestic elements animate their relationship and enhance the concerns favoring recognition of foreign arbitration

agreements." Matabang v. Carnival Corp., 630 F. Supp. 2d 1361, 1363-64 (S.D. Fla. 2009).

In its opposition to remand, SIA argued that the Franchise Agreement and the arbitration provision therein had an "important foreign element" because of the following specific connections to Canada: (1) the Franchise Agreement licenses proprietary marks that are registered and owned by SIA's Canadian parent corporation; (2) all payments under the Franchise Agreement are made directly to SIA's corporate office in Canada; (3) all shredding trucks required to be purchased under the Franchise Agreement are manufactured and sold in Canada; (4) all reports under the Franchise Agreement are submitted to SIA's corporate office in Canada; (5) all SIA employees who administer the Franchise Agreement are based at SIA's corporate office in Canada; (6) all decisions related to the Franchise Agreement are made at SIA's corporate office in Canada; (7) all records related to the Franchise Agreement are kept and maintained at SIA's corporate office in Canada; (8) SIA regularly conducts conventions, training, conferences, and other meetings from its corporate office in Canada; and (9) SIA administers the Ad Fund required by the Franchise Agreement in Canada. SIA also provided a laundry list of "services, support and activities" offered by SIA under the Franchise Agreement that are generated by SIA's corporate office in Canada.

Judge Ezra found that the facts presented by SIA in this case were similar to those on which other courts have found no reasonable relation to a foreign state. See, e.g., Matabang, 630 F. Supp. 2d at 1367 (no important foreign element to employment relationship where employer cruise ship flew a Bahamian flag, spent nights in the Bahamas, and was at sea five days per week during the employee's employment); Wilson v. Lignotock U.S.A., Inc., 709 F. Supp. 797, 799 (E.D. Mich. 1989) (employment relationship was not "reasonably related" to Europe where employee's duty was to sell products manufactured abroad in the U.S.); Jones, 30 F.3d at 366 (no important foreign element when U.S. citizens hired a U.S. company to rescue their yacht from waters off of Long Island and only purported foreign element in contract was a clause mandating arbitration in England under English law); Ensco, 370 F. Supp. 2d at 599-601 (no reasonable connection between the parties' commercial relationship and a foreign state where contract involved two U.S. corporations and concerned a drilling rig in the Gulf of Mexico). Compare with Freudensprung, 379 F.3d at 341 (agreement between two U.S. citizens contemplating performance in West Africa had a reasonable connection between the parties' commercial relationship and a foreign state that was independent of the arbitral clause itself); Lander Co., Inc. v. MMP Invs., Inc., 107 F3d 476, 482 (7th Cir. 1997) (parties' relationship involved

performance abroad or had some other reasonable relation with a foreign country where contract concerned distribution of products in Poland).

In light of the above case law and the facts of the instant action, Judge Ezra held that any connection SIH has to Canada "result solely from [SIA's] unilateral decision to perform its obligations under the Franchise Agreement in that country." Ezra Order at 25. Judge Ezra reasoned:

> The Franchise Agreement itself does not provide any evidence that the parties contemplated [SIA] would conduct its business such that the support required under the Franchise Agreement would be rendered in Canada. Furthermore, at the time that the parties signed the Franchise Agreement, [SIA] was based in California, making it difficult for the parties to predict exactly how much activity would take place in Canada. Reduced to its terms, the Franchise Agreement was executed between two American companies, granted a franchise to be operated only within the State of Hawaii, and enumerated certain duties required of the franchisor that would benefit the Hawaii franchise. [SIA] cannot unilaterally insert an "important foreign element" into the Franchise Agreement after the fact by deciding to perform its obligations under the agreement in Canada.

Id. at 25-26. Therefore, on balance, the Court concluded that SIA's relationship with SIH, as embodied in the Franchise Agreement, does not involve a "reasonable relation" with Canada to warrant a finding of an "important foreign element" in this case. Id. at 26. Accordingly, the Court ultimately determined

that the Franchise Agreement does not "fall under" the New York Convention for removal purposes. Id.

Notwithstanding Judge Ezra's conclusion that SIA's arguments for removal lacked merit, in order to determine whether Plaintiffs are entitled to removal expenses, this Court must decide whether SIA's basis for removal was objectively reasonable. See Martin, 546 U.S. at 141. As previously stated, the Ninth Circuit has interpreted this standard to mean that a plaintiff is entitled to removal expenses only where relevant case law "clearly foreclosed" the defendant's basis for removal. See Lussier, 578 F.3d at 1066-67 (citing Lott, 492 F.3d at 793).

After careful consideration of the parties' submissions in support of and in opposition to removal, the Court finds that SIA had an objectively reasonable basis for removing the instant case. While the Court disagrees that the fact that "the combined record developed on the removal petition, motions for remand, and the two Court Orders total 998 pages" necessarily "demonstrates" the objectively reasonable basis for removal, as SIA asserts, the Court agrees that SIA's removal was based upon a "complex, infrequently cited provision of the Federal Arbitration Act governing disputes that fall under the [New York Convention]." See Opposition at 4-5; Kitazato v. Black Diamond Hospitality Invs., LLC, Civil No. 09-00271 DAE-LEK, 2009 WL 3824851, at *6 (D.Haw. Nov. 13, 2009) (overruling the Magistrate Judge's

13

recommendation to award attorneys' fees for improper removal in part due to the complexity of the statute).

Moreover, the Court cannot conclude that relevant case law "clearly foreclosed" SIA's basis for removal. In particular, SIH failed to cite, and indeed the Court did not identify, any controlling precedent from either the United States Supreme Court or the Ninth Circuit that clearly foreclosed SIA's argument that its relationship with SIH, as outlined in the Franchise Agreement, created a "reasonable relation" with Canada such that an "important foreign element" existed in this case. Rather, Judge Ezra and SIH relied exclusively on non-binding, persuasive authority from other circuits regarding this dispositive issue. Notably, however, SIA cited other similarly relevant persuasive case law upon which SIA and Judge Ezra "could have concluded" that federal jurisdiction existed. See Garner, 508 F.3d at 562. Accordingly, the Court finds that SIA had an objectively reasonable basis for bringing its removal petition, and Plaintiffs are not entitled to removal expenses on this ground.

**C. SIA's Continued Opposition to Remand After Judge Seabright Determined that Civil No. 10-00622 Was Improperly Removed Does Not Constitute Unusual Circumstances**

Plaintiffs also argue that, even if there was an objectively reasonable basis for SIA's removal petition, there was no justification for continued opposition to remand of this action after Judge Seabright rejected SIA's arguments for federal

14

jurisdiction in Civil No. 10-622.  Despite Judge Seabright's November 2, 2010 order remanding Civil No. 10-00622 back to state court, SIA filed its opposition to Plaintiffs' Emergency Motion to Remand in the instant case, Civil No. 10-00621, on November 9, 2010.  Plaintiffs allege that SIA's "stubborn persistence" caused significant delay in obtaining remand in this action (six weeks until Judge Ezra's order was issued on December 27, 2010), which resulted in a delay in scheduling Plaintiffs' motion for preliminary injunction by several months.  Consequently, Plaintiffs contend that SIA's conduct constitutes unusual circumstances that warrant an award of removal expenses.

Although SIA agrees that the legal theory for removal in the two cases was the same, i.e., that the Franchise Agreement's arbitration provision fell under the New York Convention, it claims that Plaintiffs are not entitled to removal expenses because the factual bases for removal were "critically different."  See Opposition at 5.  Specifically, SIA contends that the actions involve different plaintiffs (Access vs. Access, SIH, and MacNaughton), distinct claims for relief (state law claims for unfair methods of competition vs. injunction of arbitration), and additional evidence that was purportedly unavailable at the time Judge Seabright issued his remand order.[4]

---

[4] SIA's new evidence consisted of MacNaughton's deposition testimony that (1) he understood SIA's franchise system was based in Canada at the time he entered into the Franchise Agreement;

While the Court is not inclined to go so far as to characterize the two removal petitions as "critically different," the Court does find that the factual differences between the two lawsuits are dissimilar enough to preclude a finding of unusual circumstances that would justify an award of removal expenses.

Moreover, a district court's decision to remand a case to state court is within the court's sole discretion. See 28 U.S.C. § 1447(d) (save one inapplicable exception, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise"); Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 937 (9th Cir. 2006). Despite being faced with the same legal theory for removal and similar facts, Judge Seabright's order granting remand in Civil No. 10-00622 was in no way binding upon Judge Ezra, who correctly conducted an independent review of whether the Franchise Agreement "falls under" the New York Convention in this matter. See Hart v. Massanari, 266 F.3d 1155, 1174 (9th Cir. 2001) (holding that the binding authority rule could "just as easily operate so that the first district judge to decide an issue within a district, or even within a circuit, would bind all similarly situated district judges, but it does not"); City of Fresno v. United States, 709

---

(2) he personally made four trips to Canada to visit SIA's corporate office; (3) he received training in Canada; and (4) the marketing and advertising funds described in the Franchise Agreement were administered in Canada.

16

F. Supp. 2d 888, 909 (E.D. Cal. 2010) ("District court opinions are relevant for their persuasive authority but they do not bind other district courts within the same district."). Thus, while unlikely, it was possible that Judge Ezra could have reached the completely opposite conclusion regarding removal from Judge Seabright based on the relevant persuasive case law and facts presented. Therefore, the Court finds that removal expenses are not warranted where a party's basis for removal is not clearly foreclosed, especially in light of the non-appealability of a district judge's order divesting said party of federal jurisdiction.

Finally, the Court is persuaded by case law from other circuits dealing with requests for removal expenses involving similar scenarios. The Court finds Lyons v. U.S. Steel Corp., No. 09-12097, 2010 WL 374016 (E.D. Mich. Jan. 25, 2010), particularly instructive. In Lyons, the plaintiffs sought removal expenses on the ground that the defendant should have ceased its removal efforts once it received an adverse ruling on the same issue in a companion case. Id. at *3. Just as was the case here, the defendant filed a brief opposing the pending removal petition less than a week later.[5] Id. While the court

---

[5] Although not specified in the court's opinion, the ruling in the companion case was issued on September 30, 2009, and the opposition was filed on November 3, 2009. See Order, Pichler v. U.S. Steel Corp., Civil No. 09-10843, United States District Court, Eastern District of Michigan, dkt. no. 91.

17

ultimately disagreed with the defendant's removal arguments, it found that there was no evidence that the defendant's position was frivolous, in bad faith, or unsupported by law such that removal efforts were objectively unreasonable or vexatious. Id. As a result, the court held that the plaintiff's request for attorneys' fees was unwarranted. Id. See also Hernandez v. First Student, Inc., No. 10-8243, 2010 WL 5313293 (C.D. Cal. Dec. 16, 2010) (holding that defendants declination of plaintiff's request to withdraw their removal papers was not evidence of dilatory conduct or an attempt to unnecessarily delay adjudication of the case). Similarly, even though SIA's removal petitions were denied and the practical result of its continued opposition was a delay in litigation and increased costs to SIH, there is no evidence in this case that SIA's position was frivolous, in bad faith, or unsupported by law. Therefore, the Court finds that this case does not present unusual circumstances, and Plaintiffs are not entitled to removal expenses on this basis.

## CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that Plaintiffs' Motion for Attorney Fees and Costs, filed January 10, 2011, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

///

DATED AT HONOLULU, HAWAII, MAY 18, 2011



_____
Richard L. Puglisi
United States Magistrate Judge

ACCESS INFO. MGMT. OF HAW., LLC v. SHRED-IT AM., INC.; CIVIL NO. 10-00621 DAE-RLP; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS